Turning to our calendar. The first case on the calendar is Razman v. United States of America. I have some. Yes, I know she brought me cough drops. Thank you. Good morning, Your Honor. Matthew Freitas along with co-counsel Rosie Dawn Griffin on behalf of the appellant, Dr. Sharam Razmzan. In this case about whether an individual who has been deemed to be a public health service member with respect to Part-time. Oh, I'm sorry, Your Honor. Could I reserve one minute? Part-time. He was a part-time public health service member, right? Well, Your Honor, his employment on behalf of Hudson River Health Care, as we put in the petition, says part-time. He had no other form of employment. I guess that's one of our issues we'll talk about. But he had no other source of employment. He was never paid by the hospital where the surgery was performed. He wasn't paid by the hospital? He was not, Your Honor. He billed separately. Yes, he did. Okay, go on. I think I'll accelerate where I will go then. So the real issue here, even though there's quite a bit of common ground in that he was a deemed federal employee for purposes of the care that he provided to this health center's patients, that was final and binding and irrevocable. And he was immune with respect to all care prior to the delivery and after the delivery, according to the district court decision below. Now, where we diverge is whether in the middle of the continuum of medical care, when he performed the delivery of this health center's patient that he saw the day before the delivery in the health center, whether that portion of the continuum of care was in the scope of his employment for the health center. For the sole issue of whether the sole dispute is whether by billing on his own national practitioner identifier number, that put him outside the scope of employment. That sole fact, because when you apply every other factor in the State law scope of employment test, it's very clear that he's acting on behalf of the health center. They hired him to provide inpatient and outpatient services, to provide care to their patients in the hospital, outside the hospital, to supervise those patients in the hospital and outside the hospital. Excuse me, does the health care center have any inpatient patients? Yes, Your Honor. They do. So they're not, it's not the case that a reference to inpatients necessarily means inpatients in other hospitals. There is, in other words, a referent, a potential referent for inpatient services that does not include what happened here. That's not to say, I'm not asking you to concede somehow that it doesn't include it, but I was asking the question because I was concerned that if they had no inpatient patients at their own facilities, that would kind of clinch the case for you. But apparently that's not the situation. These health centers are primarily ambulatory care operations that do have obstetrician-gynecologists. And if you look at the statute that this immunity arises under, it references surgical provisions and it references the practices of obstetricians in the fields of, I'm sorry, practice of medicine in the fields of obstetrics and gynecology, which in common vernacular is delivering babies. And that's what these particular health centers do. They cannot do that at their health center. And that's what the Delgado. So that's, I think, the question I'm a little confused about. So when the contract says your responsibilities include the care of HRH Cares hospitalized OBGYN patients, are there any hospitalized patients at the clinic? No, Your Honor. So they will see a patient for prenatal care at the health center during the course of the pregnancy. At some point in time, there's a decision made as to when to deliver or the mother goes into labor and that decision is made for everyone. In this case, the decision was made at the health center as between the plaintiff and Dr. Rasmusson talking about when to deliver. He made advice as to when to deliver, which was the following day. And then all obstetricians who deliver babies have to have admitting privileges. At a hospital. At the hospital. So there's no way to understand the contract is when it talks about hospitalized patients, it's talking about people who are hospitalized at the clinic. It means hospitalized at a separate hospital like St. John's. Yes, Your Honor. Yes, absolutely. So in particular, what we're talking about primarily are obstetrics. That's when you have hospitalized patients that you could follow from the health center into the hospital. There can be gynecological procedures, surgeries, births, babies. That's the most common. But there are others, hysterectomies, that sort of thing. Is there anything in the record to reflect whether it is standard practice? I mean, it would seem that if a patient is going to an OBGYN for prenatal care, that patient is not looking to find a new doctor when it's time to have the baby. That would make sense to me. But I'm just wondering, is there anything in the record about what the normal practice is? Does Dr. Rasmusson, in other words, typically see the patient weeks, months, or one of his colleagues, and then either he or one of his colleagues from the health care center is the person who actually delivers the baby when the time comes? I think if you ask most mothers, they would say what's typical and preferred is they want their OB to do the delivery. I would think so. Yes. But on occasion that doesn't happen. And in this particular case, a colleague of Dr. Rasmusson, another employee of the health center, was the regular OB. And then he wasn't available at the time for this last visit. But Dr. Rasmusson saw the patient and made the determination, given her medical history and the circumstances, that she needed to deliver soon. He ordered it. Right. But if that hadn't happened, then it would have been the other doctor from the health care center who followed the patient to the hospital. Correct, Your Honor. And that would be typical in the practice of the health care center. Would that have made a difference in whether the United States came in as defendant? No, Your Honor. And in that scenario, that hypothetical, Dr. Rasmusson, under his contract, would have been the head of the OB. So he had supervisory responsibility over his colleague. So if his colleague went in to do the delivery and then got called away, Dr. Rasmusson would have to step in. Or if he had to see that patient the following day because the C-section was complicated and required follow-up, Dr. Rasmusson would be responsible. I'd like to jump into the ‑‑ I have a question about the contract just before you move on. So the contract says you're responsible for all hospital billing and collections, but then immediately thereafter says you're responsible for your own professional liability and malpractice insurance. Yes. And so the government says, well, that shows that there was understanding that he was acting privately and was not covered by the FTCA. So why does the contract say that? Oh, I'd say that, one, number one, that's an argument, Your Honor, that counsel makes in their brief. It was not a factual finding below. But it is, in fact, in the contract. It's not uncommon at all for physicians to maintain private insurance. And this case is a perfect illustration of why that is. It's because of bad coverage decisions. The Office of General Counsel for the Department of Health and Human Services denied coverage for this entire case. The government didn't move in voluntarily to substitute for any portion of the case. We had to affirmatively push for substitution as to a large portion. So they make bad decisions. The case of Greater Philadelphia we cite and Keiser are two other examples of that. So did Dr. Rasmusson have private malpractice insurance? He did, Your Honor. And what I would say about that, too, is it's very interesting that the government suggests that that's an admission, when in the case of McLaren v. United States in the Fifth Circuit, the United States literally urged the Court and the Court accepted this argument that there's absolutely nothing wrong with having private insurance and this immunity at the same time because there are gaps. And we're discovering that it's fraught with them. But it shows his knowledge of the situation that at some point the government would not be covering him when he went to the hospital where he was billing patients directly. I would respectfully disagree, Your Honor. I think what it reflects is there's risk in this area, and the risk is illustrated by this policy that effectively precludes any financial arrangement like the one we have here and forecloses or precludes the state scope of employment test. Basically, for that policy to be lawful or legit, there can be never any circumstance in which a provider bills the way he did and retains the money. Even if he were to have brought the money to the health center and said, here's all my billings for the year, and then the health center gave the money back to him and said, okay, that's per our agreement, the government would say apparently that's not proper, although my point is that it renders it utterly form over substance. It is — there is the right to assign payment. That was done by the health center. That shows control over everything. You can't assign a right to money that isn't within the health center's operations. That proves that everything he did was on their behalf. Thank you, Your Honor. Thank you, counsel. We'll hear from the government. Good morning, Your Honor. May it please the Court. Benjamin Torrence for the government. At the outset, this appeal should be dismissed for lack of jurisdiction. The subject matter — excuse me, the district court dismissed — excuse me, the district court remanded the action based on its lack of subject matter jurisdiction. That means review is barred under Section 14. I have a question about that. So 28 U.S.C. 1447d says there's no jurisdiction when you're remanding to state court except that an order remanding a case to the state court from which it was removed pursuant to Section 1442 or 1443 shall be reviewable by appeal. So isn't this a case that was removed pursuant to Section 1442? It's not for four reasons. One, he's just not a Federal employee, and he does not argue that he is. He's an employee of a private clinic. That private clinic receives Federal grants, but that doesn't make him a Federal employee. And that's reflected in his notice of removal, where he does not assert a single fact that would make him a Federal employee. And then the other thing in the notice of removal is he does not actually plead. It's peculiar. He's deemed a Federal employee. Right. And the statute, by the way, doesn't talk about employees. It talks about officers. Right. Which is another word. I mean, what does that mean in the case of deemed employees? Well, so the deeming is a legal fiction in order to extend MedMal coverage to these physicians. It does not make him a Federal employee or officer. And that's reflected in the text of Section 233, which every time it refers to a deemed employee says, for the purposes of this section. So even if he, even if he, even if he, let's say there was no dispute and he was covered by the FTCA, we wouldn't, why would we have jurisdiction then if he's not a Federal employee pursuant to the Federal officer statute? If he were a deemed Federal employee, then the removal would have been proper and there would be no remand decision to review by this Court. But because the district court ruled that. I'm saying he removed it pursuant to 1442. So what would the proper grounds have been for him to remove it? First of all, he didn't. He didn't actually plead that in his notice of removal. He cites page 1 of his notice of removal, which says, I'm removing it under 233, which has similar purposes to 1442. That's not sufficient to actually put us on notice that he's removing under 1440. Isn't the conclusion referenced 233 and 1440? The conclusion does have a triple cite to those things. But that's, that brings me back to the point I was making earlier, that throughout the notice of removal there's not a single mention of any fact that would bring him within that coverage. You're saying, I mean, properly then, it wouldn't matter if he did say, right from the very beginning, I'm removing this pursuant to 1442, if that, in fact, that statute does not, it's not properly removed under 1442. Correct. It's not even colorable that he's under 1442. It's properly removed under 42 U.S. Code section 233, which has a whole, assuming that substantively he's a deemed employee, the remedy is to take advantage of 233. And 233 is a sort of special statute with particular attributes, unlike 1442. In the first instance, it's the government that comes in. If the government fails to come in, there's a provision by which the individual can, can remove. That's all correct. But the problem, the problem is, of course, what that means is that if he, on the merits, were properly deemed a Federal employee and the district court got it wrong, it would be insulated from review. That is, that may be true in some circumstances, but that was Congress's choice to provide this particular, yes, limited mechanism. And that's true as to every other removal situation except 1442 and, is it 1443 or, the Civil Rights Removal Statute? I think it's 43, yes. 43, yeah. Yes. One more point about 1442 also. If indeed he were removing under 1442, he would be very much untimely in doing so, because 1442 is subject to section 1446, which puts on a 30-day limit. This, he was over a year later that he actually effected the removal. And that 1446 30-day limit is strictly construed and mandatory. So he, he cannot rely. The 233 is, for several reasons you're saying, the only way that he gets to have any removal of the case, assuming that he's right on the merits. That's, that's his vehicle for presenting those merits to the district court. And the general removal limitation on jurisdiction says for most people, you remove, you take your chances with the district court. If the district court gets the jurisdictional point wrong, too bad. That's correct. And that's what 1447 says, and that's what the Supreme Court says in Power Act and a number of other cases. Roberts. Can I ask other questions? So, so I just want to go to the merits just when we get there. So you agree in your brief that New York law applies under the FTCA to the scope of employment inquiry, right? We're applying New York responding at superior law, right? It does apply, but it's more complicated than they make it out to be. It's not a simple question of scope of employment under responding at superior. What matters is that legal fiction, the deemed employment. And that deeming is a Federal law question. And we say this at 34 and 35 of our brief. That, that deeming fiction is not coextensive with what might be employment under a State law test. So just to give one example. But what is the part of the statute that separates out the two steps? Well, the statute sets out a bunch of things about the scope of the project and talks about how a covered entity has a project that has to be approved by the Secretary of HHS. And then the regulations in turn talk about how the scope of employment has to be within the scope of that project. And so that is what, and then that in turn has been interpreted by the manual, which sets out the alternate billing rule that. What's interpreted by the manual? This regulation section 6.6c is where. But that regulation just talks about acting within the scope of employment. Scope of employment is a term that's in the FTCA. It talks about scope of employment, but it also talks about acting on behalf of the covered entity. And then it says to be acting on behalf of the covered entity within the scope of employment, it has to be within the scope of the approved project. But why isn't this exactly that? His contract says your job with us is to follow these patients all the way through. You provide outpatient care. You provide inpatient care. You do that because our job under the federal project is to take care of pregnant women, among other people, in this community. And it certainly would be kind of ridiculous if we held ourselves out as offering prenatal care, but after the last appointment you're on your own. You have to find another doctor to deliver the baby. And that's not what happens. The FTCA manual specifically contemplates, there's a section called continuity of care, and it specifically contemplates exactly this type of situation, where someone is seen in a clinic and then has to be taken to a hospital. But because the clinic said, when that happens, you bill directly, instead of the healthcare center saying, we'll bill directly, we'll get the money, and your additional compensation on top of your regular salary for birth and babies is we will give you 99.9% or even 100% of what we get from the patient or the patient's insurance or Medicaid or whatever it comes from for payment. We give that over to you. Would that change the result in this case, in your view? I think if you had an express agreement of that type of a signing over that type of payment, that would change this case. But that's not what we have. So the substance is the same, but because not Dr. Rasmussen, who God knows has no reason to know all these details of federal regulation, but because the healthcare center, because their general counsel didn't read the manual right and didn't figure out a way to accomplish economically what they wanted to accomplish, everybody loses their federal insurance over this. I think it's supposition on the doctor's part that that's what they wanted to accomplish. It's what they did accomplish. It's exactly what they did accomplish, by letting him keep the money. Regardless of the reasons why he has some speculative stuff about they couldn't afford to make a salary arrangement with him, so they made this kind of piecework but you keep the money arrangement. But economically, regardless of why they did it, that's exactly what they did. They did the equivalent of we get the money and then we assign it over to you, or we just kick it back to you without making any assignment. Suppose they made a direct assignment. They said, we're going to get this money, but we're assigning to you our right to collect the money. Would that change the result from what you're advocating here? I think it would definitely present a different case, but again, I don't know that that's what they're accomplishing. The contract doesn't say he can just keep the money. The contract just says he's responsible. The contract says responsibilities will include the care of HRH care's hospitalized and outpatient OBGYN patients. And so hospitalized patients are the ones in the hospital. So if he refused to treat, if he treated them at the clinic and then they had to be hospitalized and he said, no, somebody else should treat them at that point, would he not be in breach of his contract with HRH care? I'm not. I don't know enough about the specifics of what might happen in those circumstances. If he made alternative coverage, I don't know that they would have an action for breach of contract. But my point about the contract is that it doesn't say he can keep the money. It says he's responsible for billing, but again, HHS has contemplated this in the alternate billing section of the manual, where it says, yes, this happens sometimes. When we have this continuity of care some of the time is up. So your position is not that the manual is an interpretation of the FTCA, but it defines the scope of the project. So there was some discussion of whether this is interpreted, this is complicit with the FTCA or whatever. But you're saying we should look to the manual not as a statutory interpretation, but as a definition of who is within the project that HHS is administering. Is that right? First of all, I don't think it's the FTCA. It's the Health Centers Act. Second of all, the regulation itself is a notice and comment promulgated interpretation of that statute. And that's where it says you have to be acting on behalf of the covered entity. And then I think the manual is a proper interpretation that fleshes that out and says when we're talking about acting on behalf of the covered entity, we have things like the alternate billing arrangement, where we contemplate continuity of care and we contemplate that you might be billing, you, the doctor, might be billing on your own. But if you do that, you've got to pay it back over to the clinic. And that fits within the common sense definition of the clinic. Acting on behalf of the clinic, they're the ones who have control of the money. Maybe they do choose to assign it. Maybe they choose to partly assign it. But they're the ones who get it and can control it, and they know about it. They have noticed that this is going on. They have noticed that this is the billing arrangement. And then they can make their own decision. And I don't know exactly what would happen in all those other hypothetical cases, but in this case, he didn't pay that money back. And that's uncontested. But that — there's nothing wrong with his not paying it back because they agreed to that. It's just something outside the scope of the coverage. This is a private doctor at a private hospital billing privately, and he's now claiming he should get the publicly funded benefit of acting on behalf of a publicly funded entity. If he had paid them over, if he had remitted that money, then he could make that claim, and he would fit within the alternate billing arrangement that HHS has contemplated. But he didn't. You remitted the money to the government, you mean? No, to the clinic. The clinic is a private grantee. They are not a government entity. They would be in the government. And how would he be paid for his services? That would be between him and the clinic, but he would either receive a salary or he would get a cut one way or the other. He's a part-time employee of the clinic. And he got a salary. And he was paid for that. He was paid almost $200,000 a year for that. So assuming that they did want to accomplish this arrangement where he gets paid the billing for the conduct at the hospital, you're saying he's not covered by the statute because he billed directly and took the proceeds. But if he had billed directly, remitted the proceeds to the government, the government gave them all back to him because that's what they wanted to accomplish, then he'd be covered. To the clinic. To the clinic. That would have to be set out. It's a different entity. I don't know. It's a different contract. He'd have to have a different contract. He would have to have a different contract. But what I'm asking is if they just decide it's more efficient for him to bill and take the money himself as opposed to it going back and forth, that's prohibited by the statute or that's? It does not conform to the HHS manual that sets out the alternate billing arrangement. And I think it's within HHS's scope of their authority to determine the scope of this coverage to say that this has to be the type of arrangement so that we have notice and that we have control. But when you say we say we, I mean, it still seems to me a rather peculiar way of thinking about when a doctor is acting on behalf of the health care center that they focus on where the money goes rather than to focus on the duties and the care of the patients, which is what we're all supposed to be concerned with here. Here he's hired to do this job. He's hired by this health care center to do the very thing that he did. And they say your compensation for that is we're paying you a salary, but you're also going to be compensated by collecting what you can collect on this work that we are requiring you to do on our behalf. Right. I don't, we don't agree with that latter part of the interpretation of the contract, that that's what the clinic agreed to. Again, they say he can bill. They don't say he can keep it. If the court were to read it as saying he can keep it, then that has to be read in light of the next sentence, which says you also have to keep your own med mal insurance. And it's a good thing he did have malpractice insurance because otherwise he would have been totally screwed here because you denied coverage for things that he actually was covered under, everyone now agrees, by the federal deeming. That is the outpatient work that he did. But if he didn't have a lawyer paid for by his malpractice insurance to come in and fight the government on that, he would have been out in the cold. He did get coverage for the clinic treatment. He did, eventually. But the government did not come in and say we're defending you on this but not on that. They said no. And he had to come in and file a lawsuit or take an action, make a motion, do whatever he had to do, represented by a lawyer who, thankfully, he had malpractice insurance coverage because otherwise he would have had to have been looking in the marketplace to pay a lawyer to do. If, in fact, HHS initially misunderstood the complaints in this action, then, you know, we may owe some people an apology, but I don't think that that should govern the outcome of this case. Thank you, counsel. Mr. Freitas. Thank you, Your Honor. I only have 12 points I'd like to make. Let's start with the jurisdiction, because if you don't prevail on the jurisdiction, it doesn't matter whether you're right on the merits. Yes. So as to the colorableness of our claim, the Court already awarded our client immunity over office of general counsel's objection and over the failure of the U.S. attorney to come in and recognize that immunity. So we can't believe we didn't make a colorable showing when we already got immunity for the lion's share of the facts. No, that's not the issue. The issue is, how do you get to the court of appeals? The statute says, because you certainly were able to remove the case under 233. But if you removed it under 233, then there's not appellate jurisdiction if it's sent back, maybe mistakenly, by the district court to State court. So it has to be removable under 1442 in order for you to be here in this court. Right. Your Honor, and that's what I was trying to get at. In order to remove under 1442, you have to have a colorable defense, which is a very low hurdle that you're acting on behalf of or under the office of a Federal office. And here, we have a final and binding deeming determination that affords a Federal immunity, which was awarded, which is, I think, that's what I'm trying to get at. To the agency, and he's working for the agency, and the agency is the Federal officer? No. He's deemed a public health service officer, which is a uniformed, it's one of our uniformed services that don't fight. He's deemed to be that type of officer, because he was treating this patient at the clinic. Correct. But not when she went to the hospital. Well, that's what we disagree on, Your Honor. And I don't actually believe that, to tie back to your question earlier, I don't believe a different contract was needed. I don't think it's fair for the government to refer to that issue as supposition. The findings below were the findings below. And the district court said and found that this contract benefited the health center by lowering its base cost to get a very experienced provider to cover this full range and shift the risk, which is what contracts do, shift the risk over to the provider that there might not be enough deliveries to make up for what his real base salary, which would be, which I know close to $200,000 is a lot of money, but it isn't a lot in Westchester or that area for OBs with 30 years' experience. It's just not the full salary. And that was contemplated. That was found. Can I also ask? I got that. So can I ask, what about this idea that there are two steps? There's the scope of the project, and then there's whether you are covered under the statute. And the manual defines the scope of the project. What's your answer to that? So the first step is the deeming, and that's where you ask to be a public health service official for a period of time in advance of that period so you know whether you have coverage or you hope you know. That's the final and binding decision by the secretary. Thereafter, when a lawsuit arises out of that period of time, there's a subsequent decision that's made as to whether the immunity that you were given that's final and binding applies to that lawsuit. Now, whether it applies to that lawsuit is a question of two elements that are in Section 233a. It's whether the person was performing medical, surgical, dental, or related functions in the scope of their employment. And now we're here on that second prong. No one's going to say that what he did wasn't medical. That's a given. Was he within a scope is the disputed issue. And as to that, he was doing the bidding of his employer who required him to go in and do that, and they compensated him by for that by assigning him the billing rights. And so he was within the scope. Is that a State law question or a Federal law question? That's a State law question. And that has been — there is no occasion for a manual to interpret scope of employment by the agency. It's just not — it's not appropriate. The statute's plain. It's had a meaning that can be understood through common canons of construction for decades. It is explicitly referred to in 1346b, which is cross-reference. But surely under New York State law, what an employee's contract says he does or doesn't do is central to deter — at least is a major factor in determining what is the scope of his employment, right? Agreed, Your Honor. And the — and many employers have manuals of some kind or other. Manuals, not the employer. I understand that, but it's binding on the employer, right? It comes from a higher source that tells the employer this is what your rules are So I'm not — you know, I think the issue is really how important is this manual, but I'm not sure that it's necessarily more important under Federal law or less important under State law. It's a kind of — it's not a regulation. It's not a notice and comment. So it's a Federal law question. It's pretty low down the hierarchy of Federal rules. On the other hand, I'm not sure that it's something that a State court would say, well, that doesn't matter at all. If the employer who's making this contract has a parent company or something that says here are the kinds of contracts you're authorized to make, and, you know, I think it would be a decent argument anyway that that's incorporated by reference into your contract. Well, I would — I agree with you all the way up until that last part, Your Honor. The last part, yes. And what I would say to that is the policy can't change the scope of employment  Can it be considered? Absolutely. And the compensation structure can be considered? Absolutely. I think every case that's been cited, Delgado, Rosenblatt, Oliveira, all those cases concern or consider the monetary piece, but not in isolation and not as the sole dispositive factor. And I think they portray a spectrum. This case falls in the middle, and I believe, we believe, falls on the side of within the scope because, with all due respect, Your Honor, I think the contract says it. And that can't be challenged, I don't think, fairly here because it was found by the lower court. And the only way to challenge that would be to give us the hearing we did ask for that wasn't given. And then it could open it, in theory, the factual pattern back up. But as it stands on appeal, the district court found, as a matter of the findings on appeal, that this contract benefited the health center. Under New York State law, that's the ballgame. That's the finding that produces the outcome we've asked for. So — Why is it not possible to read the contract the way the district court did, as authorizing moonlighting, but not saying that you're working for the health center when you're operating at the hospital? The reason, Your Honor, is because moonlighting really is doing the bidding of a separate employer. And you can't dictate how you're going to get paid by that separate employer. You can't dictate what you're going to do. One employer can't dictate what you're going to do on behalf of another employer. So there's too many cross-connecting threads and strands to suggest that this contract — If it were him, he would be self-employed at the hospital, right, because he bills for himself. So they are making a contract that involves the other employer. Is it not possible to read the contract that way, that says, okay, we're going to pay you for what you do at the clinic, but when you're at the hospital, we expect that you're going to treat the patients there, but you get to bill privately and you're working for yourself, basically, when you do it? I think that's how the government would like to interpret it, but that is — I'm just asking you to point me to something that excludes that interpretation. Why can't we read the contract that way? Well, because it refers to all the responsibilities that were performed in one document. He performed the responsibility that gave rise to this claim, and it's contemplated in that document. It doesn't say, and we'll refer to you in your separate incorporated status certain responsibilities for which you can handle the billing separately. It said, when you do this on our behalf, you bill. That's the answer, Your Honor. Thank you, counsel. Thank you, Your Honor. I will reserve decision on this interesting case.